May it please the Court, Counsel, Kendra Matthews with Ransom Blackman on behalf of Mr. Morales Alejo. Looking at a 2255 of this nature where appellate counsel is challenged, I think the first issue that petitioner needs to address is whether or not appellate counsel erred in not raising this issue. And I think the question when a brief on the merits is filed is whether or not counsel failed to file the stronger issue which requires the Court to consider the record as a whole. And I would submit to the Court when that is done, it is clear that there are very few issues that were potential issues that could have been raised on appeal in this case. One of them that was clearly preserved and that had arguable merit was the motion for judgment of acquittal on the armed portion of the bank robbery and the entirety of the 924C count. In comparison, when looking at that first prong, whether or not it was clearly stronger than the issue that was raised, I think this does meet that test. It was the only realistic hope that the charges could be dismissed. The evidentiary issue was not one that realistically could have caused that to happen. It was a 12-page brief submitted on the evidentiary issue, only four pages of substance. In addition, the attorney was aware that it was preserved. In those cases in which the Court says we will not explore the tactical decision to winnow down issues or things of that nature, they're really referring to situations where there are several issues to raise on appeal and you've narrowed it down to the three most effective. You don't want to distract the Court with invalid issues. Here, that's simply not the case. If we have to look at this in the Strickland construct, which we do, you have the lawyer actually saying, you know, I weighed this, I looked at this, I evaluated it, and this was my best judgment. So we would have to say that that was objectively unreasonable evaluation? I think that that is one piece of evidence that the Court considers, is the attorney's affidavit. And I think that in considering that, you have to weigh also that I do think the circumstances in his life were relevant in weighing that piece of evidence and then the brief submitted and the record as a whole, it's interesting to me that it sort of does pull the Court into the second part by requiring a look at the record as a whole, but I think it does. And then the fact that the brief was, there were four extensions filed to file the appellate brief. The due date came, it passed, a 12-page brief was filed raising an evidentiary issue and raising that issue in a manner that the attorney notes, my representation on that issue was not high quality, that was clearly affected by my alcoholism. I wasn't necessarily, is what he says, didn't necessarily affect my decision on whether to submit an issue on motion of judgment of acquittal and sufficiency of the evidence. But I would submit to the Court, it's more realistic for the Court to conclude this was not a tactical decision or a reasoned basis for making the decision, but in fact an expedient decision with someone going through a very difficult time trying to get a brief filed that was already defaulted. And that's our position on that argument. And I think that the district court avoided that issue by saying, although he ruled on it, by saying, I'm pulled into considering the record as a whole, I think my decision to deny the motion for judgment of acquittal was objectively reasonable, and therefore, you know, I rule on both prongs that he was not prejudiced. I think really that goes to the second prong. Okay. So let's say that we agree with you that it's close, but you're correct, given the circumstance of the alcoholism and everything we put together. Then we go to the second prong of prejudice and Jackson and the evaluation of the evidence. So that's probably where we need to concentrate. I do think that that is where the Court looks next is the motion for judgment of acquittal. And I think in this case, Your Honor, the question is, in particular, did Mr. Morales-Alejo or would a rational juror be able to conclude beyond a reasonable doubt, without speculating or just operating on suspicion about how bank directly facilitated or encouraged the use of carrying a firearm? And we've outlined the factual recitation, and the trial is fairly short. We would submit it does not follow from what was presented to the jury. You're focusing on count two. I'm focusing on count two, Your Honor. I think count one, we have made that argument in the past. I just want to make sure we're on the same count. We're focusing on count two, the 924C count. I do think that's a slightly higher standard of proof for the 924C count. And here, what the government is calling on the jury to do or a rational jury to do is to speculate that because there were conversations, you can translate those into conversations in which a weapon was encouraged or aided to be used. The various robbers, there were two, Tony Morales, who is our client's brother, and Robert Boyd, who carried weapons during this robbery. There's no evidence that Mr. Morales-Alejo spoke to Tony Morales, other than their brothers, about him using a weapon during the robbery. There is evidence that my client knew that a weapon would be used. Mr. Boyd, on the day of the scheduled robbery, however he came to be a part of this group, did not have a weapon with him. He showed up at the robbery site where the five people who were going to be involved in the act of robbery were. They decided they wanted to have an extra weapon. They determined they would go back the next day with an extra weapon. Mr. Boyd was there. He is the one who showed up the next day with a weapon. The decision was made there. The fact that there's evidence that my client spoke to, and then subsequently aided and abetted the unarmed robbery by listening to the police scanner, and was aware there were going to be gun views, does not get to the point of did he directly facilitate the use of a weapon in this crime. Did he introduce Boyd into this? He said however Boyd got introduced, my understanding was that Alejo had something to do with that. I think a rational juror could conclude that he might have learned of the offense from Mr. Morales-Alejo, that it was going to take place. However, when he came to the meeting, because he does know my client, he also knows the leader of the group, Campostilla, Robert Boyd. When they attend the meeting for planning though, Mr. Morales-Alejo, my client, is not present for the planning discussion. They discuss what weapons will be used, the need for another gun, and then as a result of that meeting, Mr. Boyd arrives at the robbery site without a weapon. I guess my point is that in these cases that you look at, Bancolari and Nelson and Medina, in terms of what you can speculate about, that's not enough. You're creating conversations in Nelson, which is an unarmed robbery case. The bank robber was known to, the defendant had caged the bank. Then he was in a car with three people who had weapons. They went into the bank, they used the weapons, and they came back out and they all took off together. And they said you can't, the court said you cannot speculate that he knew about these, knew and aided and facilitated the use of the weapon. Here, all you have is an addition that there were conversations. I don't think that takes you any further. I think a jury could reasonably assume and find that there were conversations in the Nelson case in which how did this person get from casing a bank to in a vehicle with three other people. There had to have been conversations. And the other cases as well, particularly Bancolari and Nelson case in which there's a jewelry robbery. The alleged defendant was involved in the planning. She was at the planning meeting. She was convicted of one count in which a weapon was used, but she was involved in directing the victims during the bank robbery. In the second case, she was involved in planning. She knew weapons were going to be used. She wasn't involved in the directing of the victims. And this court found her not guilty of the 924C count. And we would submit that that is the issue the court should consider when looking at the record, is whether or not you do have to engage in mere speculation to find him a rational juror to find him guilty. I'll reserve my 12 seconds. Hey, police and court. Good morning. Good morning. My name is Tom Edmonds. I'm an assistant U.S. attorney from the District of Oregon. I represent the United States this morning. Good morning, members of the court. Judge Jones of the district court was correct twice in this case. He was correct the first time as to the issues before the court when he denied the petitioner's motion for judgment of acquittal at the time of the trial. And he was correct when he denied the petitioner's motion under 2255 later on. As to the substance of this case, Mr. Giffredi was correct in his assessment of the issue that's now before the court, whether the denial of that motion for judgment of acquittal was proper in assessing all of the evidence. Let's remember that Mr. Giffredi and Judge Jones are in a very different position than anyone else in this room this morning in that they viewed all of the evidence in that trial. Mr. Giffredi had deduced evidence from witnesses in that case. Judge Jones had seen the full ambit of the trial and was in a position to evaluate the strength of the evidence. When Judge Jones made his decision to deny the motion for judgment of acquittal, he said there was ample evidence to support the charges. Now, clearly that had some impact on the process. What is the ample evidence to show that Alejo facilitated the acquisition of the gun? Well, I believe it is very ample evidence, Your Honor. First of all, there was a conversation that took place a week before the robbery took place where the ringleader of the crime, Campo Stia, goes to the petitioner and says, I want help with guns and manpower. And on the heels of that request, the evidence in the petitioner acted in that regard. Didn't Alejo say he couldn't supply a gun? Well, that's what he told the FBI, Your Honor. But that contention is no more believable than everything else that he denied. He denied any involvement in this bank robbery. That was unbelievable. And his denials to the FBI are purely unbelievable. In fact, his tactic in those interviews was to admit just enough every time to explain with some reasonable semblance of fact as to how he was involved in this. I've thrown you off. What I wanted to find out is what the evidence was that he facilitated getting the firearm that was used. Well, he got Mr. Boyd, Robert Boyd, from Eugene to come to Portland, Oregon to commit this crime. The meeting takes place two days before the bank robbery and the day before the bank robbery between Boyd and the ringleader and the petitioner. Well, is there any evidence that he got Boyd to come because Boyd was going to have a gun? Well, Boyd was a gunman. And a rational trier of fact can clearly conclude that Boyd being the gunman, one of the gunmen in this particular robbery, that his acquisition from Eugene and participation and involvement in the robbery. You say Boyd was a gunman. He was. But what do you mean by that? Well, he was one of the brandishers of firearms during the robbery. Oh, yeah, there. But but in in getting Boyd to enter into the. Conspiracy or the bank robberies, why he is not categorized as a gunman, is he? He's just a person that. Well, I would categorize him as a gunman because that was his real impact in this particular crime. He went in with a gun. Not the first time. Pardon me? Not the first time. Well, I would correct counsel's interpretation of the record on that issue. She has suggested and she didn't suggest this in her brief at all, that when Boyd showed up for that November 3rd assembly that he didn't have a gun. The record doesn't support that fact. There was one less gun reported in that evidence than there was the next morning when they had two guns. Do we have any? Is there anything to show that he had a gun? Well, what is said by witnesses in the trial is that the gun that Boyd had was his personal gun. It wasn't one brought by others. It's reported by the witnesses from evidence inside the van before the robbers go in that Boyd's gun was his personal gun. But is there what's the evidence that he had his personal gun at the first? Are you saying the record only shows that a gun was present and nobody could identify who had the gun? That's correct, your honor. And my submission to the court is that when you view the evidence in the light most favorable to the government as you need to do at this stage, that a rational trier of fact could draw an inference that that personal gun that Boyd had at the time of the commission of the robbery was one that he had brought with him from Eugene or had with him and was not contributed to by the other members who were there in the van or there at the house on the morning before the robbery. How was it argued at trial? Pardon your honor? How was that question argued at trial? Well, the government argued that Boyd's participation was a product of the petitioner's request from Eugene to participate in this robbery and that it came on the heels of the request by Campos Dia for guns and manpower. The meeting, the conversation about guns and manpower occurs a week before the robbery and within days. Boyd is up in Portland from Eugene. He shows up the first time two days before the robbery at the Northeast Coalition offices looking for the petitioner, for no one else. He talks to John Kanda. John Kanda testified at trial that when the petitioner was not there that day, Boyd left. He returns the next day once again, now in the presence of Campos Dia and the petitioner and there's a meeting held and it's very instructive and looking at this in the light most favorable to the government with the inferences that can be drawn, any reasonable inferences drawn in that favor. That meeting was instrumental to the participation of Boyd in the robbery the next day. There's no other reason why Campos Dia, a rational trier of fact, to conclude why Campos Dia, the petitioner, and Boyd are meeting within 24 hours of the robbery taking place. I guess it's a rational trier of fact could conclude beyond a reasonable doubt. That's absolutely correct, your honor, and I want to state that standard very clearly. I believe it's been misstated by counsel that that is the role you're in. You're not in a role to be a second jury in this case to assess the evidence beyond a reasonable doubt. Jackson v. Virginia and its progeny and the rules announced in that case have been around for more than a quarter century. That was the standard that Judge Jones applied to this matter. That's the standard that Mr. Capretti had to contemplate when he was assigning errors on appeal. Let me ask you, had Judge Jones looked at it, of course, under Jackson the first time around, and then it's not raised on direct appeal. It's raised here under Strickland in Ineffective Assistance to Counsel. When we apply the prejudice prong of Strickland, are we essentially just straight up looking at Jackson almost as if it were on direct appeal, or is there some other nuance because it's here under an Ineffective Assistance to Counsel rubric? Well, I don't think there's any new nuance. I think if you get to that second prong of Strickland and you have to determine whether, more likely than not, the appeal would have succeeded, you have to go to the merits. I'm not disputing that this Court doesn't have to go to the merits of that question, but you don't change the standard because the standard that was used and applied to Mr. Capretti's appraisal was that standard, and it would be tremendously unfair to either heighten the standard, and it would be foolish to lower the standard. Well, I'd like to look at the first prong of Strickland. Yes, Your Honor. Why on earth wouldn't the appellate attorney raise the question when this was two 60-months sentences consecutively, right? Yes, Your Honor. So here we've got one 60-month sentence that has, it seems to me, the best argument of success not even raised before the appellate court. We're here talking about the prejudice and so forth, but it's clear there was a pretty good argument that could have been made, and it's one half of the entire sentence and was never raised. Well, I guess I'm interpreting the Court's question whether he should have attacked the 924C count more vigorously than perhaps the armed bank robbery count. I don't know. Not more vigorously. He didn't raise it at all. Well, and I don't agree with the Court's contention that by doing so he would have strengthened his position on appeal. If he has two equally weak issues on appeal, and I believe that Mr. Guffredi's appraisal of this question was valid in saying that it was not meritorious for appeal. It may have been colorable, but there's a difference between colorable and meritorious, and I believe that Mr. Guffredi's evaluation in looking at potentially two weak arguments, he chose to make the stronger of the arguments that he believed had merit. And it's clear that if he had brought both of those issues before the Court, the issue of the minor rule status given to the witness and the admission of that testimony would have been overwhelmed, quite frankly, by this question of the sufficiency of the evidence. But on the first prong of Strickland, we don't ask that the lawyer have a slam dunk in order to provide effective assistance, do we? No. And here, obviously, we're troubled by the evidence because it's nothing more than a string of circumstances that you get there. Why wouldn't any reasonable lawyer raise that? I mean, it's not cluttering the record to raise a legitimate colorable argument when you don't have direct evidence of guilt, is it? Well, my submission to the Court is his decision was objectively reasonable because he appraised the evidence having been there, having heard it, having received Judge Jones' decision that there was ample evidence, having had the jury render verdicts of guilty on both counts in order, and he was in a position to fully evaluate that evidence. He did not believe that it was a meritorious claim. I like to sort of, you can say that about any attorney who's failed to do something, you know, give that some weight, but we still have to look at the record. Can I just extend the time just for a question? Yes. I'm looking at, is Castro one of the defendants? Yes. Okay, so Castro is testifying at ER 11 where he's asked, did you already have a one gun available to the group at that time when you were talking about doing this robbery? And he says, from what I know, yeah, we had a revolver. That's all I knew we had at the time. And then later at ER 14, he's explaining this point about why they didn't go forward on the first day, and he said, we decided we wanted to get another gun and get an early start and so on. Other than that testimony, because your argument is, as I understand it, that could, the gun that they, the sole gun they would have had on the first day, the jury could reasonably have inferred that it was Boyd's gun, because that's the link in your chain, is that this is how the defendant in this case introduced the gun and facilitated the use of the gun. Is that the only evidence on which we let this? I believe that is the only evidence, and this discussion takes place at the nighttime meeting. It's not in the morning, I believe. The discussion? The discussion about the revolver is at a nighttime meeting. And Boyd was there? Boyd was at that meeting? I believe he was. And was his gun a revolver? No, his gun was not. So, if anything, this would suggest they already had a revolver and needed a second gun, and Boyd showed up without a gun. There's an inference to be drawn there, Your Honor. You're correct. But in the description of what takes place on November 3rd, the morning before, there's no specificity given to that. And what I submit to the court is that there is a string of circumstantial evidence. But would you have had the burden of trial to establish that the gun that they had that day, if your theory is going to prove that Alejo is the source of that gun, which is in effect what you're proving, that he facilitated that robbery with that gun, didn't you have a burden to put on more than just that there was a gun, which it's up to the jury to speculate as to whether it was Boyd's or somebody else? There's kind of a major link in the chain. Well, I submit, Your Honor, that the evidence that incorporated the admissions that the petitioner made to the FBI about conversations he had and then his specific physical actions, I don't believe that the government bears the burden of proving any particular firearm or any particular gun, necessarily, other than to have proven that he aided and abetted the contribution or the addition of a gunman to the 924. Not a gunman. Gunman or a gun. A gun. And a gunman incorporates a gun, Your Honor. That's my submission, that a gunman is, by way of a human being brandishing the gun, a gun to that particular robbery. And his role was an important one because Boyd came from outside. He's the primary link between that person and the commission of that brandishing of the firearm during the course of that bank robbery. Thank you. Thank you. Thank you. You may take a minute or so for rebuttal. Unless the Court has any questions, I don't want to overstay my welcome. You're always welcome. Two points in the record were raised by the Court in terms of looking at the testimony of Campos and Ramos, the two co-conspirators who testified at trial. I cannot direct the Court's attention to a specific page, although the pages the Court was looking at were the ones I had right off the top of my head. I believe it's fairly clear that Tony Morales had the, I don't want to say had the revolver, but I agree with the government's statement of the standard in terms of what the Court is looking at. I think that there would be an argument that, under Strickland, we could possibly have somewhat of a lesser burden in terms of establishing prejudice. But in this context, I don't think it makes any difference because, as a practical matter, this Court needs to find that Mr. Morales-Aleo was entitled for a motion of judgment of acquittal for there to be any use to the procedure. Well, why couldn't a jury have found from the string of evidence that your opponent has indicated? Why couldn't a rational jury have come to the conclusion that he did facilitate getting the gun into the operation? Well, I think, Your Honor, looking at the facts, I think that the primary issue is that Robert Boyd was also friends with Campos Dia, although arguably I think that they can assume that our client notified Mr. Boyd that there was a robbery that was going to take place. Beyond that, our client is not involved, other than speculating that because he denied. That wouldn't seem to be your strongest argument because if we're to give the government its due on any reasonable jury, the jury could believe who was responsible for Boyd. As the government's arguing, the issue, it seems to me, comes down to whether he was the gunman. He was recruited as a gunman, knowing he would bring the gun and use it, and I don't know that it helps to speculate whether your client was the one or not who brought Boyd in. And I think that's, Your Honor, when I began the first time, I think that's why I said, however Mr. Boyd came to the situation, I do not think that you can support a jury could conclude that he was brought in as a gunman, given that the planning meetings discussed the use of a revolver, and it's clear that Mr. Morales, my client's brother, used a revolver on the day of the robbery when they planned to attend. And I do think, if you look at the record, it was at that meeting in the morning that they said, we're getting a little bit of a late start, we need to get another gun, and that there was that conversation. My client, Mr. Morales Alejo, was not present at that conversation. I do not think a reasonable jury could then somehow go back in time a week and say, you've called Mr. Boyd up, and because he owns a weapon, you've therefore brought in a gunman. I don't think that's consistent with the case law. In fact, other co-conspirators also own guns. They just didn't happen to be the ones to bring the gun. Thank you. Thank you for your arguments. The case of the United States v. Morales Alejo is submitted. We'll submit Desert Outdoor v. Oregon Department of Transportation on the briefs. And that brings us to the next case, Cooper Industries v. Sutton & Johnson.
judges: Hug, McKeown, Fisher